IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GEMMA TZEN,

Petitioner,

v.                                                                   No. 16-0734-DRH

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM and ORDER

HERNDON, District Judge:

### Introduction and Background

Pending before the Court is Tzen's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). The government vigorously opposes the motion. As the parties are aware, the Court held various hearings (11/9/16, 2/1/17, and 2/23/17) related to her motion and allowed the parties to extensively brief the issues contained in her original motion for relief.[1] After considering all the testimony, the voluminous pleadings and the case law, the Court finds that Tzen is entitled to relief based on the recent decision by the United States Supreme Court in *Lee v. United States*, 137 U.S. 1958 (June 23, 2017).[2]

---

1 For the sake of brevity, the Court need not recite the lengthy procedural history of this case.
2 As the Court finds that Tzen is entitled to relief based on *Lee*, the Court need not address her other arguments for relief.

On February 20, 2014, Gemma Tzen, a citizen of the United Kingdom, was charged with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 from September 10, 2010 to January 13, 2011 (Count 1) (Doc. 1). *USA v. Tzen*, 14-30033-DRH.[3] Tzen pled guilty pursuant to a plea agreement on February 18, 2015. *Id.* at Docs. 28, 30n & 31. On August 7, 2015, the Court sentenced Tzen to 12 months and one day, 3 years supervised release and ordered to pay restitution in the amount of $51,968.29. *Id.* at Docs. 51, 52, 53, & 54. Tzen did not appeal. During her criminal case, retained counsel Mr. John Stobbs represented Tzen.

On June 30, 2016, Tzen timely filed her § 2255 motion. She raises the following grounds for relief:

(1) Ineffective assistance of counsel for failing to investigate the law and facts before advising her to plead guilty. She claims she never joined the conspiracy and terminated her employment when she learned that her co-workers might be engaged in criminal activity.
(2) Ineffective assistance of counsel based on counsel's failure to inform her that the guilty plea would result in her mandatory deportation from the United States of America based on 8 U.S.C. § 1227(a)(iii).
(3) Ineffective assistance of counsel based on counsel's mis-advice concerning her sentencing exposure; and
(4) Ineffective assistance of counsel when her counsel failed to investigate and object to a loss amount that exceeded the loss amount attributable to Tzen, the number of victims defrauded, and failed to request a split sentence as provided by the guidelines under Zone C of the Sentencing Table.

As mentioned previously, the Court focuses its discussion entirely to Tzen's argument that counsel was ineffective in that he failed to inform her that if she pled guilty to the charges in the Indictment that she would be automatically deported.

---

[3] Tzen's criminal case is one of many telemarketing timeshare resale schemes criminal cases that have been filed and resolved in the Southern District of Illinois.

## 28 U.S.C. § 2255 Standard

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum allowed by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)(quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)(Section 2255 motion is "neither recapitulation of nor a substitute for a direct appeal.")(citation omitted). As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009); *Torzala*, 545 F.3d at 522.

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro v. United States,* 538 U.S. 500, 504-05,

123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Fountain,* 211 F.3d at 433-34. Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance. *Massaro,* 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

### III. Analysis

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000). Either *Strickland* prong may be analyzed first; if that prong is not met, it will prove fatal to plaintiff's claim. *Strickland,* 466 U.S. at 697; *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

Regarding the first prong of the *Strickland* test, counsel's performance must

be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland,* 466 U.S. at 689. The petitioner's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted). In other words, the Court must not become a "Monday morning quarterback." *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir. 1990). With regards to the second prong of *Strickland,* the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams,* 453 F.3d at 435 (citing *Strickland,* 466 U.S. at 694).

Here, Tzen argues that she can establish both prongs because she would have never accepted a guilty plea had she known that she would have been deported as a result. She maintains that she would have gone to trial and risked more jail time for the chance of an acquittal that would have let her remain in the United States.

In *Lee*, a lawful permanent resident pleaded guilty to a drug offense after counsel erroneously assured him numerous times that he would not be deported due to the plea and conviction. *Id.* at pp.1962–1963. Counsel was aware that the issue of deportation was "*the* determinative factor" in Lee's decision.

*Id.* at p. 1967. In the plea colloquy, the court advised Lee that he could be deported, and asked if that would affect his decision, and if so, how. Lee responded that the possibility of deportation would affect his decision, but stated he did not understand the court's question about how his decision would be affected. Lee consulted with his attorney, who dismissed the court's advisement as a "'standard warning.'" Lee then pleaded guilty. *Id.* at p. 1968. After sentencing, Lee learned that deportation was mandatory in his case because the crime was an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B). *Lee, supra,* 137 S.Ct. at p. 1963.

Lee then moved to vacate his conviction and sentence, claiming ineffective assistance of counsel. *Id.* at pp. 1963–1964. The District Court denied relief, and the Sixth Circuit Court of Appeals affirmed. *Id.* at p. 1964. On appeal to the Supreme Court, the government conceded that counsel's performance had been deficient, arguing instead that Lee could not establish prejudice under *Strickland* in light of the overwhelming evidence of his guilt. *Lee, supra,* 37 S.Ct. at p. 1964. The Supreme Court reversed, holding that the proper standard for prejudice was not whether Lee was likely to be successful at trial, but whether "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' ([*Hill v. Lockhart* (1985) ] 474 U.S. [52,] 59.)" *Id.* at p. 1965. The court emphasized that "'[s]urmounting *Strickland's* high bar is never an easy task,' [citation], and the strong societal interest in finality has 'special force with

respect to convictions based on guilty pleas.' [Citation.] Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at p. 1967. In Lee's case there was "substantial and uncontroverted evidence" that if counsel had not misadvised him, Lee would have insisted on going to trial. *Id. at p. 1969.* The record unequivocally showed that "deportation was *the* determinative issue" in Lee's decision. *Id.* at p. 1967. The Supreme Court concluded that under "the unusual circumstances of this case,... Lee [ ] adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation." *Ibid*.

The Court agrees with Tzen that *Lee* impacts her case on many levels. As in *Lee*, the focus of Tzen's decision-making in her criminal case was whether or not she would be deported. In fact, Tzen was so concerned about the deportation issue that she consulted/hired another lawyer, Adam Philpott. Mr. Philpott advised her that she might be able to avoid deportation if she was not a threat to national security. (Doc. 47 at p. 17). Philpott stated: "If not, the next best thing would be to have the Judge and the prosecutor put on the record, and judgment and sentence, that they do not feel Gemma is a threat to national security, border security, or public safety and they do not recommend that she be deported back to England." (Doc. 39 p. 219). The record reflects that Mr. Philpott and Mr. Stobbs discussed the deportation issue. While Mr. Stobbs initially thought Tzen

would be deported, he subsequently thought that there was a chance she might be able to stay in the United States if she was not a national security risk. Before Tzen pled guilty, Mr. Stobbs sent an email to AUSA Reppert stating:

Tzen is desperate not to be deported. You and I have discussed the finer points of this. The law has been modified a tad by Obama. The $10,000 is no longer the gold standard. Now people like Tzen need to show that they're not a threat to national security, border security, or public safety.

(Doc. 39, p. 224; Gov. Ex 11).

In addition to the above, Tzen's plea agreement states: "11. The Defendant understands that as a non-citizen of the United States, her plea of guilty *may* subject her to deportation. Deportation is governed by statute and the United States Attorney's Office has no agreement with the defense counsel in regards to deportation." 14-30033-DRH, Doc. 30, p. 4 (italics added). Similarly during the plea colloquy, Tzen was informed that there was a real possibility of being deported based on her conviction, however she was not informed that she *would be* deported. Nor did the Court inquire about the effect of deportation on her decision to plead guilty. It is clear that the advice given to Tzen by both Mr. Philpott and Mr. Stobbs was confusing, conflicting and wrong. Had the Court inquired about the effect it is likely the confusing and conflicting nature of the advice Tzen had received would have come to light and could have been pursued by the Court for a more thorough inquiry about the voluntary nature of the plea.

Alternatively and additionally, the Court finds that counsel misadvised Tzen that an incomplete and invalid ostrich instruction applied to her case and

foreclosed her defense. During her "reverse proffer" with the government, the government showed Tzen a power point slide that contained the ostrich instruction. That instruction read:

> 7th Cir. Pattern Instruction
> 4.06 [Excerpt]

"You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word."

(Doc. 3-1, p. 17). This instruction was incomplete and was misleading. It omitted the phrase "You may not conclude that the defendant had knowledge if he was merely negligent in not discovering the truth." See 7th Circuit Pattern Criminal Instruction 4.06 (1998). Counsel misadvised Tzen that if she had a suspicion of wrong-doing she could not evade guilt. It is clear to the Court that had Tzen received both clear and correct advice regarding her immigration status and clear and correct advice regarding the application of the aforementioned pattern instruction insofar as her the suspicion or indifference of her wrong-doing, she would not have pleaded guilty.

Based on the record and the circumstances of this case, the Court finds that Tzen did not make a rational decision to plead guilty and that counsels were ineffective pursuant to *Lee* and the Sixth Amendment.

## Conclusion

Accordingly, the Court **GRANTS** the Tzen's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). The Court **VACATES** Tzen's conviction and sentence in *United States v. Tzen*, 14-30033-DRH. The Court **DIRECTS** the Clerk of the Court to enter judgment and to enter a copy of this Memorandum and Order in Tzen's criminal case.

Further. the Court **DIRECTS** the government to inform the Court in writing in the criminal case within 30 days of this Memorandum and Order if it intends to pursue the prosecution of the Gemma Tzen. If the government intends to pursue the prosecution of Gemma Tzen, the trial shall commence 70 days of this Memorandum and Order.

**IT IS SO ORDERED.**

Digitally signed by
Judge David R. Herndon
Date: 2017.09.22
15:23:59 -05'00'

**United States District Judge**